Case No.: 20-55622

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

J.K.J, individually, and successor in interest to the Deceased Aleah Jenkins, by and through his guardian-ad-litem Jeremy Hillyer

,

*Plaintiff-Appellant*,

vs.

CITY OF SAN DIEGO, et al.,

*Defendants-Appellees.*

Appeal from the District Court for Southern District of California,
Case No. 3:19-cv-02123-CAB-RBB
Honorable Cathy Ann Bencivengo United States District Judge

## APPELLANT J.K.J.'S REPLY BRIEF

Kaveh Navab, Esq (SBN: 280235)
NAVAB LAW, APC
13160 Mindanao Way, Suite 280
Marina Del Rey, California 90292
Telephone:  310.826.1002
Email: Navablaw@gmail.com

Neama Rahmani, Esq. (SBN. 223819)
H. Dean Aynechi, Esq. (SBN. 292229)
WEST COAST TRIAL LAWYERS, APLC
350 South Grand Avenue, Suite 3350
Los Angeles, California 90071
Telephone: (213) 927-3700
Email: filings@westcoasttriallawyers.com

*Attorneys for Plaintiff-Appellant.*

# **TABLE OF CONTENTS**

*Pages*

INTRODUCTION……………………………………………………………1

ARGUMENT…………………………………………………………………4

    I.    The District Court Abused Its Discretion When It Decided that The Allegations in the FAC Were "Superfluous"……….……… …..4

    II.    Appellant's First Cause of Action for Denial of Medical Care was Well Pled and Should Not Have Been Dismissed …………..…........6

    III.    The Denial of Medical Care Claim Could Have Been Analyzed Under the Fourth Amendment …………………………………...10

    IV.    Officers Durbin and Taub Are Not Entitled to Qualified Immunity ………………………………...……………………11

    V.    Appellant's *Monell* Claim Should Not Have Been Dismissed……...16

    VI.    The Declaration Submitted by Mr. Hillyer was Sufficient and Appellant Has Standing to Proceed…………………………18

    G.    Appellant's Complaint Always Maintained A Deprivation of Life Without Due Process Claim ……………………………..21

CONCLUSION…………………………………………………………...23

CERTIFICATE OF COMPLIANCE………………………………………24

CERTIFICATE OF SERVICE…………………………………………25

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                    **PAGE**

*Abrego v. City of Los Angeles*, 2016 WL 9450679
    (C.D. Cal. Sept. 23, 2016)………………………………………………20

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011).........................................................12

*Board of County Comm'rs of Bryan Cty., Okl. v. Brown*,
    520 U.S. 397 (1997)...............................................................................17

*Bolker v. C.I.R.*, 760 F.2d 1039 (9th Cir. 1985)………………………………11

*Castro v. County of Los Angeles*,
    833 F.3d 1060 (9th Cir.2016)...............................................................6, 7

*Christie v. Iopa*,
    176 F.3d 1231, 1234-1240 (9th Cir. 1999)...............................................16

*Clouthier v. County of Contra Costa*,
    591 F.3d 1232, 1250 (9th Cir. 2010).......................................................16

*Curnow v. Ridgecrest Police*,
    952 F.2d 321, 325 (9th Cir.1991)...............................................................21

*Dean v. City of Fresno*, 546 F. Supp 2d 798 (E.D. Cal. 2008)…………………7

*Delay v. Gordon*, 475 F.3d 1039 (9th Cir. 2007)……………………………..4

*Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001)...........................................12

*Estate of Levingston v. County of Kern,* 2018
    WL 1335410 (E.D. Cal. Mar.15, 2018)…................................................15

*Estate of Mendez v. City of Ceres*,
    390 F.Supp.3d 1189 (E.D. Cal. 2019) .......................................................17

iii

*Frost v. Agnos*, 152 F.3d 1124 (9th Cir. 1998)…………………...…................12

*Gordon v. County of Orange*, 888 F.3d 1118 (2018)............................................6

*Grant v. McAuliffe,* 41 Cal. 2d 859 (Cal. 1953)……………………………..18

*Henriquez v. City of Bell*,
    2015 WL 13357606 (C.D. Cal. 2015...........................................................11

*Hope v. Pelzer,* 536 U.S.730 (2002)........................................................................12

*In re Tracht Gut, LLC*, 836 F.3d 1146(9th Cir. 2016)............................................5


*Jett v. Penner,* 439 F.3d 1091 (9th Cir. 2006)…………...............................7


*Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015)...................................................6

*Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988 (9th Cir. 2018).....................5


*Lolli v. County of Orange*, 351 F. 3d 410 (9th Cir. 2003)……………………......8

*Mackie v. Cty. of Santa Cruz,*
    444 F.Supp.3d 1094 (USDC N.D. Cal. 2020)...........................................16

*Marsh v. Cnty. of San Diego,* 680 F.3d 1148 (9th Cir. 2012)...............................16

*McGuckin v. Smith*, 974 F.2d 1050 (9th Cir. 1992).................................................13

*Morales v. City of Delano*, 2012 WL 1669398 (E.D. Cal. May 11, 2012)……....22

*Ouiroz v. Seventh Ave. Center*, 140 Cal. App.4th 1256 (Cal.2006)……………....18

*Ovando v. City of Los Angeles*,
    92 F.Supp.2d 1011(C.D. Cal. 2000)...........................................................23

*R.A. ex rel. Penrose v. Morris*, 2015 WL 1191266
(C.D. Cal. Mar. 16, 2015)……………………………………………….19

*Raymond v. Martin,*
2018 WL 4560686 (E.D. Cal. Sept. 20, 2018)............................................20

*Sutton v. Sokotowski*, 2007 WL 1113950 (N.D. Cal. Apr. 13, 2007)……………..20

*Taylor v. Riojas*, 141 S. Ct. 52 (2020)……………………………………………….12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
551 U.S. 308 (2007)........................................................................................4

*Torres v. City of Madera,* 524 F.3d at 1056 (9th Cir. 2008)...................................11

*United States v. Hinkson*, 526 F.3d 1262 (9th Cir. 2008)…………………………….4

*Wheeler v. City of Santa Clara,* F.3d 1046(9th Cir. 2018)....................................21

**STATUTES**

California Code of Civil Procedure

§337.32....................................................................................................................19,20

§377.11....................................................................................................................19

§377.30....................................................................................................................18,19

Federal Rule of Civil Procedure

Rule12(b)(6)............................................................................................................3

## INTRODUCTION

At a moment when the nation's attention is fixated on addressing injustices and accountability in our police forces, this case presents a key example of the lack of accountability when an individual in custody who pleads for "help" and exhibits clear and objective signs of overdosing dies due to the involved Officers' deliberate indifference to their serious medical needs. Appellees' central factual argument throughout their brief appears to be that Aleah Jenkins' (hereinafter "Ms. Jenkins") was in essence faking her serious medical needs while overdosing to avoid going to jail on that faithful day. Regardless of whether Mr. Jenkins wanted to go to jail or not that day—individuals in custody rarely if ever do—such statements made while in custody do not and should not abdicate Appellee Officers Lawrence Durbin (hereinafter "Durbin") and Jason Taub's (hereinafter "Taub") responsibility and legal duty under the law to provide medical care to individuals in their custody. As Appellees' aptly point out, the legal standard for a constitutional denial of medical care claim under the Fourteenth Amendment is an objective one. Here, when the totality of circumstances confronting Durbin and Taub are viewed in an objective manner the First Amended Complaint ("FAC")— when viewed in the light most favorable to Appellant—demonstrates a cognizable and plausible claim for relief under all causes of action. Appellees tellingly minimize or disregard, the objective signs of a serious medical need exhibited by

1

Ms. Jenkins that day, including, but not limited to her vomiting, repeatedly pleading for assistance saying she was "sick", screaming "help me please…help me…I'm telling you I can't", the call to paramedics that was cancelled unjustifiably and unnecessarily, her excessive panting, body twitching, shaking and the deliberately indifferent decision by Durbin to place Ms. Jenkins back in the patrol car handcuffed and face down for *eleven minutes and thirty seconds*[1] only to return and find her no longer breathing.

Moreover, despite Appellees' contention, no aspect of the FAC contradicts the publicly available partial body cam footage from Durbin that was incorporated by reference into the FAC. For example, Appellees posit that the incorporated video contradicts the allegations that Ms. Jenkins vocalized objective signs that suggested she needed medical care and was overdosing on drugs. In fact, the opposite is true, Appellees tellingly seek to have this Court ignore the multiple times Ms. Jenkins stated she was "sick", saying "please help me", screaming "help me please…help me…I'm telling you I can't". This is in addition to the clear and objective signs of heavy breathing, the load screams, constant load moans, and unresponsiveness which all to a reasonable officer would be signs of distress.

---

[1] Despite Appellees contention otherwise in their answering brief, in their Second Motion to Dismiss Appellees stated, "Officer Durbin went to get a cup of water for Ms. Jenkins and returned about *eleven minutes and thirty seconds* later." (ER00158 14-15) (emphasis added). As such it was part of the record below and was taken into consideration by the District Court in rendering its Order on the Motion to Dismiss.

With regards to qualified immunity, as the Supreme Court has long held, and recently reasserted, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question" even if the specific action in question has not previously been held unlawful. *See Taylor v. Riojas*, 141 S. Ct. 52, 54 (2020); *Hope v. Pelzer*, 536 U.S. 730, 740–41 (2002). Here, as Appellees concede as of November 2018, a pre-trial detainee in custody had a right to not have their serious medical needs treated with deliberate indifference by law enforcement. Based on the allegations set forth in the FAC—which must be taken as true—qualified immunity is inapplicable to the actions taken by Taub and Durbin as the law was clearly established at the time and both officers were on fair notice that they are required to treat the serious medical needs of those in their custody.

Furthermore, the District Court abused its discretion when it decided that the allegations in the FAC were "Superflous" due to the incorporated partial body cam footage. The allegations in the FAC—read collectively—must be taken as true at the 12(b)(6) stage. With regards to Appellant's standing the declaration filed by J.K.J's father Jeremey Hillyer meets the requirements set for under California law and is sufficient to establish Appellant's standing. Lastly, Appellant has always maintained a Deprivation of Life Without Due Process claim and is entitled to all damages pled in the FAC. For all the reasons below, and those in the Appellant's

3

opening brief, the District Court's decision to dismiss the FAC must be reversed, and the case remanded for further proceedings.

## ARGUMENT

### I. The District Court Abused Its Discretion When It Decided that the Allegations in the FAC Were "Superfluous"

Appellant does not dispute that the District Court could consider the body cam footage that was incorporated by reference into the FAC. However, the District Court abused its discretion when it rendered the entirety of the factual allegations set forth in the FAC as "superfluous" because of the incorporated by reference body cam. "A district court abuses its discretion when it makes an error of law, when it rests its decision on clearly erroneous findings of fact, or when we are left with 'a definite and firm conviction that the district court committed a clear error of judgment.'" *United States v. Hinkson,* 526 F.3d 1262, 1277 (9th Cir.2008) (quoting *Delay v. Gordon,* 475 F.3d 1039, 1043 (9th Cir.2007)).

Here, Appellant's decision to incorporate the footage by reference for demonstrative purposes was not done with aim of replacing or superseding the entirety of the allegations in the FAC, which the District Court improperly did in rendering its decision. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007) ([t]he inquiry is whether all the facts alleged, taken collectively… not whether any individual allegation, scrutinized in isolation, meets that standard.). There was an extensive number of allegations in the FAC, which must

4

be taken as true, that went well beyond what was captured in the partial body cam video. However, by doing so the District Court improperly converted Appellees' 12(b)(6) motion into a Motion for Summary Judgment, when no discovery had taken place, and no opportunity for discovery was afforded to Appellant, which is improper and lacks merit under the law. This Court has cautioned District Courts that "what inferences a court may draw from an incorporated document should also be approached with caution." *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 1003 (9th Cir. 2018). Thus, when we a document, or in this instance a partial video, is incorporated by reference into a complaint, when ruling on a motion to dismiss district courts are still prohibited from resolving factual disputes at the pleading stage. *Id.*; *See also In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016) ("At the motion to dismiss phase, the trial court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff.").

The District Court abused its discretion, when it stated that written allegations were "superfluous" in light of the partial body cam footage, going as far as stating that they "contradicted" the claims in the FAC, however, never point to a single contradiction in the Order dismissing the FAC. (1-ER-244:1-9). The District Court failed to point out a single contradiction between the body cam and the FAC and made the illogical, unsupported, and clearly erroneous decision to

5

disregard the entirety of Appellant's FAC because of the incorporation by reference of the partial body cam. Such a clearly erroneous decision is reversible error, and this Court should find that the District Court abused its discretion.

## II. Appellant's First Cause of Action for Denial of Medical Care was Well Pled and Should Not Have Been Dismissed

As was set forth in Appellant's opening brief, Appellant maintains that in light of the facts alleged in the FAC both Officer Taub and Durbin were deliberately indifferent to Ms. Jenkins' serious medical needs while she was in their custody. Under the Fourteenth Amendment, claims for denial of medical care are evaluated under an objective deliberate indifference standard. The elements of a claim against an individual defendant are: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Gordon v. City of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018) (adopting an objective reasonableness standard with respect to the third prong, considering developments in Section 1983 jurisprudence under *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015) and *Castro v. Cty. Of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).

A medical need is serious "if the failure to treat the [detainee's] condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). It has long been settled that deliberate indifference is shown where an official "purposefully ignore[s] or fail[s] to respond to a prisoner's pain or *possible* medical need." *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) (reversed on other grounds) (emphasis added). As stated in the opening brief, based on this Court's holding in *Castro*, Appellants need not show that Durbin or Taub knew Ms. Jenkins had swallowed or ingested excessive amounts of drugs to prevail on their deliberate indifference claim. *Castro*, 833 F. 3d at 1070-71("[A] pretrial detainee need not prove those subjective elements about the officer's actual awareness of the level of risk.").

Appellees' reliance on *Dean v. City of Fresno*, 546 F. Supp 2d 798, 813 (E.D. Cal. 2008) lacks merit. First, it must be noted that *Dean*, a District Court case, was decided after a motion for summary judgment where a much fuller record was established, contrary to the instant case that was dismissed on a 12(b)(6) motion, with no discovery conducted. Second, although the District Court in *Dean*, reasoned that based solely on the decedent in that case vomiting no constitutional violation occurred, the Court, however, went on find that a reasonable jury could find that a constitutional violation occurred when looking at the totality of circumstances confronted by the involved officers. *Id* at 814. In

7

*Dean*, the Court reasoned that the totality of circumstances which included, vomiting, fruitive movements before the stop, rock cocaine being found in his vomit, an empty vial, money, and pager, could and should have led a reasonable officer to believe that the detainee was facing a serious medical need and thus the failure to provide such care was deliberately indifferent. *Id*. at 813-814. The Court further reasoned that deliberate indifference may be shown through inaction and through withholding medical treatment. *Id; See Lolli v. County of Orange,* 351 F.3d 410, 419 (9th Cir. 2003).

Here, as set forth in the opening brief the totality of circumstances confronted by Taub and Durbin demonstrate that Ms. Jenkins serious medical need of overdosing while in custody was treated with deliberate indifference. Looking at the totality of the circumstances does not amount to using 20/20 hindsight. It is undisputed that at the scene of the arrest Taub and Durbin were aware that the male occupants of the Cadillac had prior arrests and/or convictions for narcotics sales, Ms. Jenkins' warrant, a saran wrap-like plastic (common use for narcotics sales), and a wallet with a lot of cash. (1-ER-120:1-19; video at 0:00-7:45). Soon thereafter, Taub and Durbin observed her vomit on herself while in the back of Durbin's patrol vehicle, and when asked why Ms. Jenkins stated, "I'm sick" twice. (1-ER-121:12-20; video at 11:54-12:20.) Taub then asked if she was "detoxing" to which Decedent responds, "No, I'm sick my stomach is turning.", and then stated

she was pregnant. *Id*. He then also asks "did you eat something? And Mr. Jenkins conflictingly responds "mm-mm" while nodding her head. (1-ER-119 footnote video 12:05-12:49.) At 11:41 of the video footage from Durbin's body cam it indicates "Officer prepares to request medics respond". (1-ER-121:21-22). The fact that paramedics were called and cancelled, in addition to the questions regarding detoxing and ingesting drugs by Taub and Durbin, makes it abundantly clear that both Durbin and Taub had knowledge and a fair indication—at the early stages of Mr. Jenkins' arrest—that there was a high likelihood drugs were involved, and that she was likely exhibiting symptoms related to ingesting drugs when she vomited. It is precisely for this reason, that at the after leaving Mr. Jenkins handcuffed and face down in the back patrol car for *eleven minutes and thirty seconds*, when Durbin was asked by another officer if it was drug arrest he states "*yes…she was surrounded by narcotics…she has a warrant for narcotics…but she is not a 11-5…she may have ingested something*." (1-ER-119 footnote 1; video 1:26:30-1:27:12.). Furthermore, during the over one-hour transport of Ms. Jenkins to the police station by Durbin, her physical state began deteriorating in an obvious and objective manner. As the partial body cam and the FAC demonstrate the multiple times she pled, "I'm sick", her pleas and screams of "Help me!", "please help me, please help me", "oh my god, please stop, stop, stop", and "help me…. I'm telling you I can't"; obvious sign of physical distress

when she could stand up at the initiation of the traffic stop but could not stand or sit and lay on the ground face first in and out of consciousness when arriving at the station; her loud panting, obvious abnormal breathing rate, body twitching and shaking while she lay face down in the back seat of the patrol car and on the ground at the station. Moreover, there is no evidence in the FAC or body cam that Ms. Jenkins was able to control the rate of her breath as Appellees' state, rather it is the contrary, she was panting and breathing abnormally, which to a reasonable officer would be a sign of overdosing or serious medical need. This is not a situation of 20/20 hindsight, but rather a situation where during over two hours, Ms. Jenkins exhibited a serious medical need before Taub and Durbin's eyes, while pleading for help and telling them she was sick, among numerous other objective signs, only to be ignored until she slipped into a coma and dying days later. At a minimum, these facts demonstrate a plausible and cognizant claim for denial of medical care at the pleading stage and the District Court's dismissal decision must be revered and the case remanded.

## III. The Denial of Medical Care Claim Could Have Been Analyzed Under the Fourth Amendment

As was set forth in detail in Appellant's opening brief, the denial of medical care allegations in the FAC can be analyzed pursuant to the Fourth Amendment reasonableness standard. In the interest of brevity, Appellant will not restate the argument concerning the applicability of the Fourth Amendment to the denial of

medical care claim set forth in the opening brief, however, Appellee's reliance on *Bolker v. C.I.R.*, 760 F.2d 1039 (9th Cir. 1985) is misplaced and inapplicable. The applicability of the Fourth Amendment to Appellant's denial of medical care claim was extensively raised and briefed in the lower court and addressed by the District Court in its order. *Bolker* stands for the proposition that new issues not raised in the lower court or in the notice to appeal cannot be raised for the first time before the Court of Appeal. 760 F.2d at 1042. No such issue exists here. While it is true, the cases *Henriquez v. City of Bell*, 2015 WL 13357606 (C.D. Cal. 2015) and *Torres v. City of Madera*, 524 F.3d 1053 (9th Cir. 2008) were not cited in the briefing in the District Court, this Court can still consider them because the issue of the analyzing denial of medical care pursuant to the Fourth Amendment was extensively briefed and decided by the lower court. Lastly, the same reasons set forth in Appellants opening brief and above, qualified immunity does not shield Durbin and Taub from liability.

## IV. Officers Durbin and Taub Are Not Entitled to Qualified Immunity

Appellant maintains that Appellees Durbin and Taub violated Ms. Jenkins' clearly established and well-defined right to medical care while in custody. A reasonable officer in Durbin and Taub's position would have known that Ms. Jenkins was overdosing—a serious medical need—and would have summoned immediate medical care for her. The district court erred in its qualified immunity

finding that because it found no constitutional violation by Durbin or Taub of Ms. Jenkins rights they were entitled to qualified immunity. The district court then went on to hold, assuming there was a constitutional violation, Durbin and Taub would be entitled to qualified immunity because rights in question were not clearly established at the time. This Court should find that Durbin and Taub are not entitled to qualified immunity and reverse and remand the case to the District Court.

As Defendants concede, as of November 2018, a pre-trial detainee had the right to not have their serious medical needs treated with deliberate indifference by law enforcement. *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). To that point, the Supreme Court recently reiterated, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question" even if the specific action in question has not previously been held unlawful. *See Taylor v. Riojas*, 141 S. Ct. 52, 54 (2020); *Hope v. Pelzer*, 536 U.S. 730, 740–41 (2002). Similarly, in *Ashcroft v. al-Kidd*, the Supreme Court explicitly held that "[w]e do not require a case directly on point." 563 U.S. 731, 741 (2011).[2] Furthermore, in considering existing precedent, the Court "may look

---

[2] *See also Deorle v. Rutherford*, 272 F.3d 1272, 1285-1286 (9th Cir. 2001) ("Although there is no prior case prohibiting the use of this specific type of force in precisely the circumstances here involved, that is insufficient to entitle [the defendant] to qualified immunity: notwithstanding the absence of direct precedent,

at unpublished decisions and the law of other circuits, in addition to Ninth Circuit precedent." *Prison Legal News v. Lehman*, 397 F.3d 692, 702 (9th Cir. 2005).

As set forth in Appellant's opening brief and the FAC, the totality of the circumstances confronting Taub and Durbin demonstrate that they violated Ms. Jenkins right to medical care when faced with her serious medical need of overdosing while in custody. It has long been settled that deliberate indifference is shown where an official "purposefully ignore[s] or fail[s] to respond to a prisoner's pain or *possible* medical need." *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) (reversed on other grounds) (emphasis added). It is undisputed that during the initial pull over and search of the vehicle Ms. Jenkins was in, the information known to Taub and Daub included: knowledge that the male occupants had prior arrests and/or convictions for narcotics sales, Ms. Jenkins' warrant, found a saran wrap-like plastic (commonly used for narcotics sales); and a wallet with a lot of cash. (1-ER-119:13-120:19; video at 7:37-7:45.). Objective signs that reasonable officer would understand to mean that there was a likelihood drugs were involved. While still at the scene of the vehicle pull over, Durbin and Taub both observed Ms. Jenkins vomit and state that she was "sick". (1-ER-121:12-20; video at 11:54-

---

the law may be, as it was here, clearly established. Otherwise, officers would escape responsibility for the most egregious forms of conduct simply because there was no case on all fours prohibiting that particular manifestation of unconstitutional conduct.") (internal citation omitted).

12:20.) This then prompted Durbin to request that Taub call the paramedics, which he did, only to have Durbin moments later tell Taub to cancel the paramedics for no apparent reason. (1-ER-121:21-22; video 11:41-12:22). In addition to requesting the paramedics Durbin and Taub questioned Ms. Jenkins about "withdrawing" or "detoxing" based on the above knowledge and their suspicion that drugs were involved. (*Id*.) Appellant maintains that Durbin made the deliberately indifferent decision to instruct Taub to cancel the call to paramedics despite the obvious serious medical emergency Ms. Jenkins was suffering from. (1-ER-121:23-122:12.) After that, the record reflects that Ms. Jenkins physical state began deteriorating. As the video and FAC set forth the numerous and multiple times she pled, "I'm sick", her multiple pleas and screams of "Help me!", "please help me, please help me", "oh my god, please stop, stop, stop", and "help me…. I'm telling you I can't"; obvious sign of physical distress when she could stand up at the initiation of the traffic stop but could not stand or sit and lay on the ground face first in and out of consciousness when arriving at the station; her loud panting, obvious abnormal breathing rate, body twitching and shaking while she lay face down in the back seat of the patrol car and on the ground at the station; the decision to leave her handcuffed and face down in the patrol car for *eleven minutes and thirty seconds* after all the above obvious signs of a serious medical need—all demonstrate deliberate indifference toward Ms. Jenkins' serious medical needs.

14

The facts set forth in Appellant's FAC are more than sufficient to make a plausible claim for denial of medical care.

Tellingly, Appellees ignore the allegations in the FAC which highlight that at the time of the incident, based on Durbin and Taub's training, POST and the San Diego Police Department Policy Manual, Section 6.12, which states that "[o]fficers transporting persons in need of emergency medical treatment shall take them to the nearest primary emergency facility", Durbin and Taub were on fair notice to provide medical care to individuals such as Ms. Jenkins who displayed objective signs of a serious medical need. (1-ER-127:22-128:7). Focusing on *Estate of Levingston v. County of Kern*, Appellees ignore that the District Court in that case found that qualified immunity applied after summary judgment finding that the officers in that case, suspecting an overdose, summoned a paramedic and firemen for medical evaluation, and neither the paramedic nor fireman recommended further medical intervention. 2018 WL 1335410, at *10 (E.D. Cal. March 15, 2018). The opposite happened here, Durbin and Taub, suspecting drugs and overdose called the paramedics and unreasonably and unjustifiably cancelled the paramedics moments later. All of the above, and the facts and law in Appellant's opening brief, set forth plausible facts demonstrating that Ms. Jenkins faced a serious medical need when she was overdosing while in custody for over two hours, and that Durbin and Taub knew of such a risk and disregarded it. Therefore,

15

viewing the facts in the light most favorable to Appellant, qualified immunity should not have been granted in favor of Durbin and Taub on the denial of medical car claim.

## V. Appellant's *Monell* Claim Should Not Have Been Dismissed

Appellant put forth a viable *Monell* claim at the pleading stage. It is well-established law in the Ninth Circuit that a municipality can be held liable as a "person" under 42 U.S.C. § 1983 if it caused a civil rights violation under any of the following three theories: (1) commission, (2) ratification, or (3) omission. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249-1250 (9th Cir. 2010), *overruled on other grounds by Castro*, 833 F.3d 1060. Moreover, the Ninth Circuit has held that *Monell* liability can be premised on a single incident, including deliberately indifferent training and ratification. *Christie v. Iopa*, 176 F.3d 1231, 1234-1240 (9th Cir. 1999). A local government may be held liable under section 1983 for "acts of "omission" when such omissions amount to the local government's own official policy. *Id.* at 1249; *See Mackie,* 444 F.Supp.3d at 1114 (courts recognize a 'failure to train' as sufficient to establish *Monell* liability) *citing Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1159 (9th Cir. 2012) ("a failure to train can be a 'policy' under *Monell*"). Additionally, like a municipality's 'failure to train,' municipal liability under a section 1983 claim is found due to the city's 'failure to supervise.' Said failure "can constitute a policy of inaction that

16

amounts to deliberate indifference to a plaintiff's constitutional rights." *Estate of Mendez v. City of Ceres*, 390 F.Supp.3d 1189, 1207-1208 (E.D. Cal. 2019).

There are several ways in which a county may be liable for 'inadequate training.' The first is through a deficient training program "intending to apply over time to multiple employees," whereby the continued observance by policymakers "to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action-the 'deliberate indifference'-necessary to trigger municipal liability." *Board of County Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 407 (1997). Second, a local government may be liable if "the existence of a pattern of tortious conduct by inadequately trained employee" is the "moving force behind plaintiff's injury." *Id.* at 407-408. Third, a plaintiff may prove a claim for 'failure-to-train' without demonstrating a pattern of constitutional violations where "a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Id.* at 409.

When examining the and the San Diego Police Department policies, as alleged in the FAC, such policies mandate that a police officer must render medical aid to an arrestee who becomes disoriented and/or shows other signs of distress and a police officer who transports a person in need of emergency medical treatment

17

"shall" take that person to the nearest primary emergency facility. (1-ER-138:22-139:18.) Here, there was a deliberate choice of Durbin and Taub to deprive Ms. Jenkins of the immediate medical care required to prevent Ms. Jenkins' untimely death. Had, Durbin and Taub been trained by the City of San Diego effectively, then Ms. Jenkins would have obtained the medical help necessary, and the dire outcome would not have occurred.

## VI. The Declaration Submitted by Mr. Hillyer was Sufficient and Appellant Has Standing to Proceed

Survival causes of action are governed by Section 377.30; which provides: "[a] cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest... and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest." A survival action is a cause of action that existed while the decedent is alive and survives the decedent. The decedent's personal representative or successor in interest may commence that action. (§§ 370.10, 377.30; *Grant v. McAuliffe* 41 Cal 2d 859, 864 (Cal. 1953); *Quiroz v. Seventh Ave. Center* 140 Cal.App.4th 1256, 1264, (Cal 2006) ["Unlike a cause of action for wrongful death a survivor cause of action is not a new cause of action that vests in the heirs on the death of the decedent. It is instead a separate and distinct cause of action, which belonged to the decedent before death but, by statute, survives that event].

The Declaration filed by Jeremy Hillyer meets the requirements of the Section 377.30 and 377.11 of the California Code of Civil Procedure. (ER 257-258). Appellees made the false assertion, by way of implication, that Appellant, J.K.J. is not Ms. Jenkins' successor interest without any true evidence, except to point out that Ms. Jenkins also has other children. In a recent civil rights case, the Court held that even if there are other successors in interest and even if those interests in the decedent's estate are larger than the plaintiff's (which is not the case here), does not mean that they have a superior right within the meaning of CCP § 377.32. *R.A. ex rel. Penrose v. Morris*, 2015 WL 1191266, at *4 (C.D. Cal. Mar. 16, 2015) (Despite decedent having a surviving spouse and another child did not mean that they had a superior right to commence the action, and the court found that the declaration was sufficient to establish the plaintiff's standing and right to damages resulting from the survival causes of action). Appellees have located no authority establishing that all potential heirs must be joined to a § 1983 suit. The fact that Ms. Jenkins had other children does not mean they have a "superior right" to J.K.J.'s survival damages, which seems to be Appellees' insinuation. The fact that other successors in interest have chosen not to pursue litigation, by no means should extinguish J.K.J.'s legal and "equal" right as a successor in interest to Ms. Jenkins, such a finding would be patently unfair and contrary to the law. While Appellant must have standing under California's

19

survival statute in order to pursue § 1983 claims on Ms. Jenkins' behalf, Appellant has filed the requisite affidavit required by California law. This is generally sufficient to establish Appellant's standing to pursue § 1983 claims on a Ms. Jenkins' behalf. *Raymond v. Martin*, 2018 WL 4560686, at *2 (E.D. Cal. Sept. 20, 2018).

Furthermore, the Declaration filed by J.K.J's father, Jeremy Hillyer, meets the requirements of Cal. Civ. Proc. Code § 377.32, and substantially complies with the requirements of California law. Federal Courts within this district face with similar arguments have held that "[d]ismissal of a claim on technical, Section 377.32 grounds is disfavored", allowing claims to proceed where plaintiffs submitted declarations in substantial compliance with the provision. *Abrego v. City of Los Angeles*, 2016 WL 9450679, at *6 (C.D. Cal. Sept. 23, 2016); see also *Sutton v. Sokotowski*, 2007 WL 1113950, at *5 (N.D. Cal. Apr. 13, 2007) ("[a]lthough plaintiffs have not employed the exact technical language required by § 377.32 . . . they have filed declarations that substantially comply with section 377.32, the court perceives no benefit to dismissing their claim on such technical grounds".) Accordingly, the District court's finding must be reversed, and Appellant's standing found to be proper.

///

20

## VII. Appellant's Complaint Always Maintained A Deprivation of Life Without Due Process Claim

Despite Appellees contention otherwise Appellant has always maintained a Deprivation of Life Without Due Process Claim and maintained that both survival and wrongful death damages are due under the claims. Appellant is also seeking "loss of love" and "companionship" damages individually, which is augmented by the Due Process Clause of the Fourteenth Amendment. The Ninth Circuit recognizes that children, like parents, possess the right to assert substantive due process claims under the Fourteenth Amendment because they have a constitutional interest in familial companionship. *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1957-1958 (9th Cir. 2018); *See also Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1229-1230 (9th Cir. 2013) ("This Circuit has recognized that a child has a constitutionally protected liberty interest under the Fourteenth Amendment in the "companionship and society" of her father") *referring to Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991). A child can pursue a section 1983 cause of action individually where there has been a deprivation of his or her right to familial companionship. Though Fourth Amendment and personal injury claims belong to the decedent and are brought on his or her behalf by the successors in interest, "[c]laims for damages arising out of the loss of Decedent's companionship and support belong to the survivors and are asserted by them on their own behalf" as a violation of a liberty interest deriving from the loss of familial association or

21

companionship and support under the Due Process Clause of the Fourteenth Amendment. *Morales v. City of Delano*, 2012 WL 1669398 at *8 (E.D. Cal. May 11, 2012).

Appellant's FAC states, "[p]laintiff and Decedent had a cognizable interest under the Substantive Due Process Clause of the Fourteenth Amendment of the United States Constitution, to be free from state actions that deprive of life, liberty or property in such a manner as to shock the conscience, including but not limited to, *unwarranted state interference in Plaintiff's relationship with his mother*." (FAC, ER 141 ¶ 87). The official conduct that 'shocked the conscious' was Durbin and Taub's failure to render medical care to Ms. Jenkins despite the objective signs of her serious medical need during the arrest, during the drive to the police station, and while at the headquarters police station, all of which was pled and incorporated in the third cause of action of the FAC. Appellants FAC specifically states, "[p]laintiff repeats and realleges each and every allegation in paragraphs 1 through 84 of this Complaint with the same force and effect as if fully set forth herein." (FAC, ER 140 ¶ 85). Thus, Appellees' argument that no facts that "shocked the conscious" were incorporated into the FAC falls flat and lacks merit.

A child may, therefore, assert a Fourteenth Amendment substantive due process claim in a section 1983 action if the child is deprived of his liberty interest in the companionship and society of his parent. In *Ovando v. City of Los Angeles*,

92 F.Supp.2d 1011, 1018-1019 (C.D. Cal. 2000), the court held that plaintiff's minor daughter held a viable substantive due process claim under section 1983 for the deprivation of her constitutional right to familial association due to her father's wrongful incarceration. Appellant also stated that this conduct caused Appellant to have been "deprived of love, companionship, comfort, care, assistance, protection, affection, society, and moral support of Decedent, and will continue to be so deprived for the remainder of his natural life," obviously evidencing a permanent and not temporary deprivation. (1-ER-141:24-142:6.) Appellant maintains that these facts and arguments were before the district court which decided them improperly. As such, Appellant's request for these damages in his Prayer for Relief is proper.

## CONCLUSION

For all the foregoing reasons, the judgment below should be reversed and remanded.

Dated: April 12, 2021            **NAVAB LAW, APC**

By:        /s/ Kaveh Navab

Kaveh Navab, Esq.

*Attorney for Plaintiff-Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 20-55622

I am the attorney or self-represented party.

**This brief contains** | 5,699 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P.
29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because
*(select only one):*

  ○ it is a joint brief submitted by separately represented parties;

  ○ a party or parties are filing a single brief in response to multiple briefs; or

  ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [                ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Kaveh Navab | **Date** | April 12, 2021

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

**Form 8** | *Rev. 12/01/2018*

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2021, I electronically filed the foregoing

document APPELLANT J.K.J's REPLY BRIEF with the Clerk of

the Court for the United States Court of Appeals for the Ninth Circuit by using the

appellate CM/ECF system.

I hereby certify that all participants in the case are registered CM/ECF users

and that service will be accomplished by the appellate CM/ECF system.

Dated: April 12, 2021      By:_____/s/ Kaveh Navab_____

                                               Kaveh Navab