Case No.: 20-55622

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

J.K.J, individually, and successor in interest to the Deceased Aleah Jenkins, by and through his guardian-ad-litem Jeremy Hillyer

,

*Plaintiff-Appellant,*

vs.

CITY OF SAN DIEGO, et al.,

*Defendants-Appellees.*

Appeal from the District Court for Southern District of California,
Case No. 3:19-cv-02123-CAB-RBB
Honorable Cathy Ann Bencivengo United States District Judge

## Petition for Panel Rehearing and Rehearing En Banc

Kaveh Navab, Esq (SBN: 280235)
NAVAB LAW, APC
13160 Mindanao Way, Suite 280
Marina Del Rey, California 90292
Telephone: 310.826.1002
Email: Navablaw@gmail.com

Neama Rahmani, Esq. (SBN. 223819)
H. Dean Aynechi, Esq. (SBN. 292229)
WEST COAST TRIAL LAWYERS, APLC
350 South Grand Avenue, Suite 3350
Los Angeles, California 90071
Telephone: (213) 927-3700
Email: filings@westcoasttriallawyers.com

*Attorneys for Plaintiff-Appellant.*

## **TABLE OF CONTENTS**

*Pages*

INTRODUCTION.................................................................................1

STATEMENT OF MATERIAL FACTS...............................................4

ARGUMENT....................................................................................12

    I.    The Majority Overlooks a Material Point of Law Resulting in a
            Conflict with Another Decision of this Court So That Rehearing or
            Rehearing *En Banc* is Necessary to Secure Uniformity of This Court's
            Decisions


CONCLUSION..................................................................................17

CERTIFICATE OF SERVICE............................................................18

# TABLE OF AUTHORITIES

**CASES**                                                      **PAGE**

*Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir.2016)............................13

*Demuth v. County of Los Angeles*, 798 F.3d 837 (9th Cir. 2015)......................15

*Jones v. Trubig*, 963 F.3d 214 (2nd Cir. 2020)…………………………………...15

*Gibson v. Cty. Of Washoe, Nev.*, 290 F.3d 1175 (9th Cir. 2002)......................15

*Inouye v. Kemma*, 504 F.3d 705 (9th Cir. 2007)…………………………………16

*Jett v. Penner,* 439 F.3d 1091 (9th Cir. 2006)………...............................................13

*Person v. Callahan,* 555 U.S. 223 (2009)……………………………………...15

*McGuckin v. Smith*, 974 F.2d 1050 (9th Cir. 1992).........................................13, 15

*Sandoval v. County of San Diego*, 985 F.3d 657 (9th Cir. 2021)…………...3, 12-13

## STATUTES

Federal Rule of Appellate Procedure

35(b)………...............................................................................................................1

40(a)(2)………………………………………………………………………….1

## INTRODUCTION

Appellant J.K.J petitions for rehearing and rehearing *en banc* of the Opinion (Doc. 37-1) of November 15, 2021 entering judgment in favor of Appellees and affirming the decision of the District Court of the Southern District of California. A panel rehearing is appropriate when a material point of law was overlooked in the decision, Fed. R. App. P. 40 (a)(2). An *en banc* hearing is appropriate when (1) consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or (2) the proceeding involves a question of exception importance. Fed. R. App. P. 35 (b); 9th Cir. R. 35-1.

On May 9, 2019, due to San Diego Police Officers Lawrence Durbin (hereinafter "Durbin") and Jason Taub's (hereinafter "Taub") failure to summon immediate medical care for Aleah Jenkins (hereinafter "Ms. Jenkins") after she vomited, repeatedly plead for assistance saying she was "sick", screaming "help me please…help me…I'm telling you I can't", and exhibiting clear and unambiguous signs of a serious medical need at the scene of her arrest, during the entirety of the over one hour drive while handcuffed in the back of Durbin's patrol vehicle and while at the San Diego Police Department Headquarters ("Headquarters"), Ms. Jenkins needlessly died. Revealingly, while still at the scene of the arrest after observing Ms. Jenkins vomit, dry-heave, be visibly disoriented, and hunching over while handcuffed Taub made the call for paramedics, however,

Durbin deliberately and recklessly—while faced with clear signs of Ms. Jenkins'
serious medical need—shouted to Taub "don't worry about it", to get Taub to
cancel the paramedics, which Taub immediately did. Under the totality of the
circumstances, both Durbin and Taub knew that Ms. Jenkins needed immediate
medical attention yet acted deliberately indifferent to her medical needs.

As demonstrated on Durbin's bodycam footage (which was incorporated by
reference into the Appellant's First Amended Complaint and here[1]), for the entire
duration of over one-hour drive from the scene the arrest until arriving at the
Headquarters, Durbin knowingly demonstrated deliberate indifference toward Mr.
Jenkins' serious medical needs. The same is true once at the headquarters, Ms.
Jenkins' displayed obvious signs of medical needs when she could no longer stand
and instead lay on the ground face first in and out of consciousness, panting, body
twitching and shaking, and despite this Durbin made the deliberately indifferent
decision to place her back in the patrol car handcuffed and face down for *eleven
minutes and thirty seconds* only to return and find her no longer breathing.

In the judgment of counsel, a panel rehearing or an en banc hearing is
appropriate to secure or maintain uniformity of the Court's decisions and the

---

[1] The publicly available body cam video incorporated by reference into Plaintiff's
FAC: **https://www.youtube.com/watch?v=-cx5dQ_u04k&has_verified=1**

proceeding involves a question of exception importance. Appellant therefore respectfully petitions for rehearing, or rehearing *en banc*, on the grounds that the majority's ruling both conflicts with Ninth Circuit precedent, is appropriate to secure or maintain uniformity of the Court's decisions and the proceeding involves a question of exception importance. In a particular, Appellant maintains that in light of this Court's ruling in *Sandoval v. County of San Diego*, 985 F.3d 657 (9th Cir. 2021) the majority is this matter should not have held that Appellee Lawrence Durbin and Jason Taub are entitled to qualified immunity. Moreover, the majority in this matter improperly applied the standard under the Fourteenth Amendment and espoused in *Sandoval*—as highlighted in the dissent—that the standard applied under the Fourteenth Amendment in denial of medical care cases is "whether the officer's actions were objectively reasonable under the circumstances." (Dkt. 37-1, p. 37).

Furthermore, as emphasized in the dissent, the district court and the majority opinion improperly offered a truncated and "highly sanitized" version of the facts giving rise to the lawsuit. (Dkt. 37-1, p. 26). Moreover, as the stated in the dissent it is well-established precedent in this Circuit that a mistake of fact that is unreasonable does not shield an officer by way of qualified immunity. (Dkt. 37-1, p. 45). Here, as the facts were alleged in the complaint before the District court and before this Court on appeal, both set forth plausible and well set forth facts that

3

Officer Durbin made an unreasonable mistake of fact as to Aleah Jenkin's serious medical needs and, as such, a factual issue that a jury must resolve. (Dkt. 37-1, p. 46). *See Wilkins v. City of Oakland,* 350 F.3d 949, 955 (9th Cir. 2003).

Overall, this case demonstrates the need for clear guidance on cases involving these issues from this Court.

## STATEMENT OF MATERIAL FACTS

On November 27, 2018, at approximately 3:52 p.m., Ms. Aleah Jenkins was the backseat passenger in a Cadillac vehicle pulled over by Officers Nicholas Casciola ("Casciola") and Taub for having expired registration. (1-ER-119:2-28.) Officer Lawrence Durbin ("Durbin") arrived soon after to provide cover for Casciola and Taub. (*Id.*) The front seat of the vehicle was occupied by two males who both had prior convictions for narcotics sales. (*Id.*) After being pulled out of the vehicle and while being handcuffed, the driver told the officers about his arrest/conviction for heroin sales. (*Id.*; video at 0:19-0:24[2].) At the time, while seated upright in the back seat, Ms. Jenkins was alert, responded to questioning from the officers and complied with their request to provide her name, date of birth, and informed them of her probation. (1-ER-119:13-120:19; video at 1:13-1:43.) After the search and

_____

[2] The publicly available body cam video incorporated by reference into Plaintiff's FAC: **https://www.youtube.com/watch?v=-cx5dQ_u04k&has_verified=1**

the questioning of the occupants of the vehicle, the information known to Casciola, Taub and Daub included: knowledge that the male occupants had prior arrests and/or convictions for narcotics sales, Ms. Jenkins' warrant, a saran wrap-like plastic (commonly used for narcotics sales); and a wallet with a lot of cash. (1-ER-119:13-120:19; video at 7:37-7:45.)

**Cancellation of Paramedics Call**

When being walked to Durbin's vehicle she was able to walk without assistance and without issue. (*Id.*) When Durbin returned to his patrol car some moments later, Ms. Jenkins, who was handcuffed in the back seat at the time, gestures to Durbin from inside the car for help and Durbin then notices that she has vomited on herself in the back seat of the patrol car. (*Id.*; video at 11:20-11:41.) Durbin then opened the back door of the vehicle and asking, "why are you throwing up" and she responded, "I'm sick" as she is vomiting. (*Id.*) Durbin then asked her again "why" and she again responds, "I'm sick" as she is vomiting. (1-ER-121:12-20; video at 11:54-12:20.) While she continued to dry heave and vomit, Durbin asked her if she was "withdrawing", and Taub stated if she was "detoxing", to which she responds, "No, I'm sick my stomach is turning." (*Id.*) Durbin then tells her to "stick your head out" as she continues to vomit and dry heave leaning out of the car door while handcuffed. (*Id.*) She then tells Durbin that she is pregnant while she is continuing to vomit. (*Id.*)

At 11:41 of the video footage from the body cam it indicates "Officer prepares to request medics respond". (1-ER-121:21-22.) When Durbin first noticed the vomiting, he requested that Taub call the paramedics. (1-ER-121:23-122:4; video at 11:54-12:22.) Despite continuing to vomit, dry-heave, visibly disoriented, exhibiting signs of distress by hunching over while handcuffed, deterioration of her condition from moments prior when she was walking and standing, having glossy eyes, trouble speaking, and incoherent statements, Durbin yells to Taub, who had already placed the call to paramedics, "don't worry about it", to get Taub to cancel the paramedics, which Taub immediately did. (1-ER-121:23-122:12.)

Durbin made the deliberately indifferent decision to instruct Taub to cancel the call to paramedics despite the obvious serious medical emergency Ms. Jenkins was suffering from. (1-ER-121:23-122:12.) Reasonable officers, in the position of officers like Durbin and Taub, based on their Police Officer Standards and Training (hereinafter "POST") and San Diego Police Department (hereinafter "SDPD") policies and training know that it is their duty to ensure the safety of ill or injured persons, to evaluate emergency situations, and to take necessary actions for the well-being of the ill or injured person. (*Id.*) At approximately 4:05 p.m. (one hour after the traffic stop), Durbin closes the rear door on Ms. Jenkins and begins driving toward the headquarters. (1-ER-124:19-26.)

**Ms. Jenkins' Condition Takes a Serious Turn for the Worst**

From approximately minute forty-five (45:00) of Durbin's body cam, Ms. Jenkins' condition takes a turn for the worst and her continual groaning, screaming, and panting increasing becomes louder. (1-ER-125:16-25; video 45:00-1:04.) In response to a loud scream, Durbin asks, "what's going on" and "Ms. Jenkins you still want water?" to which Decedent does not respond. (*Id*; video 46:34-47:25.) After a few moments go by, Durbin again says "Ms. Jenkins" and she responds by gasping and groaning. (*Id;* video 46:34-47:25.) Her unresponsiveness to questioning at times is an objective sign that she was experiencing a medical emergency and is contrary to Durbin's training and policy to not request immediate medical attention. (1-ER-125:26-126:3.) Durbin continues to drive and ignore the repeated groans, screams, panting, abnormally rapid rate of breathing and objective signs of medical distress and overdosing. (1-ER-126:4-17.) While at times Durbin attempts to engage in conversation, by informing her she can "sleep" and that they are "stuck in traffic", her barely audible responses, screams, and unresponsiveness, amounts to objective signs that her condition is deteriorating and needed immediate medical attention. (*Id*; video 45:00-1:04.)

At approximately 1:04 (one hour and four minutes) of Durbin's body cam footage, she begins screaming very loudly and pleading, "please help me, please

help me". (1-ER-126:4-17; video at 1:04-1:06.) Durbin responds, "what's going on'', Ms. Jenkins who is panting and screaming, does not give audible responses but screams, "oh my god, please stop, stop, stop". (*Id*; video at 1:05:10.)

At approximately 1:14 (one hour and fourteen) of Durbin's body cam, he decides to pull over his vehicle because Ms. Jenkins has not responded to his questions or comments for approximately ten (10) minutes since she last screamed "oh my god, please stop, stop, stop". (1-ER-126:18-22; video at 1:14:10.) Durbin pulls over, walks around to the back door, opens it, and finds her body laying down on the back seat, and part of her body falls out of the car door. (1-ER-126:23-127:14; video at 1:14:26-1:14:38.) At this moment, Ms. Jenkins is displaying objective signs of a serious medical, including, but not limited to panting, abnormally rapid rate of breathing, listless body, and unresponsiveness for approximately ten (10) minutes. (*Id.*) Durbin then says, "I need you to stay awake" and he places his hand on her to push her back into the car—a clear indication that he has an understanding that she is in distress by asking her to stay awake—and as he is pushing her back into the car she pleads with him "I'm sick" as he slams the door shut. (*Id.*; video at 1:14:26-1:14:38.)

After slamming the door on her listless body, Ms. Jenkins screams "Help!" as Durbin walks back to the driver door saying, "Knock it off". (1-ER-128:8-16; video at 1:14:39-1:15:22.) Demonstrating his conscious and deliberate indifference

again, Ms. Jenkins pleads "help me please" and Durbin says "you're fine" after having done nothing to evaluate her condition despite objective signs she was overdosing. (*Id.*) As Durbin continues to drive, Decedent continues to scream "help me…. I'm telling you I can't". (*Id.*) During the over one-hour drive to the Headquarters, Ms. Jenkins condition objectively continued to deteriorate, displaying obvious signs of extreme physical distress and a serious medical need. (1-ER-128:17-22.)

**San Diego Police Department Headquarters**

Upon arriving at the station and opening the back door, Ms. Jenkins was lying face down in the back seat handcuffed, panting loudly, breathing at an abnormally rapid rate, demonstrating clear and objective signs she was overdosing and exhibiting a serious medical need. (1-ER-129:3-23; video 1:17:18-1:17:55.) As Durbin continues to stand over her, she continues to pant profusely, breath at an abnormally rapid rate and her body begins twitching and shaking while lying face down in the back seat. (*Id*; video 1:17:18-1:18:29.) At this juncture, despite the totality of the circumstances and the aforementioned objective signs of a serious medical need Durbin made no effort to summon paramedics, medical care, or have Jenkins evaluated by medical staff that was present at the station. (*Id.*)

Durbin then pulls her listless body out of the back of car, she screams in distress again, and continues to pant excessively and breathe in an abnormally rapid manner. (1-ER-129:24-130:6; 1:18:30-1:19:00.) He then lays her on the concrete ground as she again pleads "Help me", which prompts Durbin, who ignores her pleas for help, to say to the approaching DOE officer that "she doesn't want to go to jail". (*Id.*; video 1:19:00-1:19:10.) Durbin converses with the officer about fingerprinting Ms. Jenkins, as she shakes and twitches on the ground, screams in distress appearing to go in and out of consciousness. (*Id.*; video 1:19:00-1:19:35.)

While Durbin is standing over Ms. Jenkins, he asks her if she wants water, as the other officer fingerprints her, to which she does not respond, nevertheless, Durbin states, "Ok, sounds good, no water". (1-ER-130:7-16; video 1:19:55-1:20:47.) While Durbin and the officer are standing over Ms. Jenkins as she lay on the ground her body continues to twitch and shake displaying clear and objective signs that she is overdosing and in need of a serious medical attention. (*Id.*) Durbin and the officer take no action to address the serious medical needs of Decedent as she lay on the ground overdosing. (*Id.*; video 1:19:55-1:22:05.)

After the results of the finger printing, Durbin and the other officer attempt to lift her off the ground and place her in the back seat of the patrol car. (1-ER-130:7-26; video 1:23:02-1:24:02.) Her body is listless, she continues to go in and out of consciousness, her body twitches and shakes, and her breathing is at an abnormally

rapid rate. (*Id.*) Instead of summoning medical care Durbin begins to threaten her and stays "if you start resisting us there is an extra charge" and yelling "Stand up…stop faking it", to which she helplessly mumbles "I am not". (1-ER-130:7-26.) Durbin then lifts her entire body up and places her listless body face first on the back seat of his patrol car, as the other officer pulls her body from the other side of the vehicle. (*Id.*; video 1:23:02-1:24:02.) Durbin then closes the door and walks away, while Decedent is locked in the backseat face down and handcuffed, in need of medical attention. (1-ER-130:27-131:12.)

Durbin returns sometime later[3] and opens the back door and as she lay face down handcuffed and attempts to shake her with his hands as she is unresponsive. (1-ER-130:27-131:12; video 1:24:07-1:24:33.) Durbin then walks around to the other side of car to pull her body out of the car and lays her on the ground again. (*Id*; video 1:24:32-1:25:15.) He repeatedly says, "Ms. Jenkins wake up" as she is completely unresponsive, and attempts to take her pulse saying, "I can't tell if she is breathing or not". (*Id*; video 1:24:32-1:27:16.) While attempting to revive her, he states to the other officers that now arrived that she was responsive "seconds ago", which is untrue, as by Defendants own statement in their motion Durbin had last left her in the vehicle *eleven minutes and thirty seconds*. (*Id.* Video 1:26:19-

---

[3] Appellants admitted in their Motion to Dismiss that Durbin left Ms. Jenkins in the patrol car back seat for eleven minutes and thirty seconds. (1-ER-158:14-15).

1:26:30.) As the attempts to revive her continue, Durbin is asked if it was a narcotics arrest—as it was obvious she as overdosing—and he states "yes...she was surrounded by narcotics...she has a warrant for narcotics...but she is not a 11-5...she may have ingested something." (*Id.* Video 1:26:30-1:27:12.) After repeatedly attempting to unsuccessfully wake Ms. Jenkins to no avail, paramedics were finally summoned. (*Id.*) Ms. Jenkins proceeded to go into a coma and died on December 6, 2018. (1-ER-131:13-27.) Durbin first encountered Ms. Jenkins at approximately 3:52 and at approximately 6:14, for the nearly two and half hours (2.5 hours) that Durbin was interacting with her, he continually and repeatedly ignored objective signs that she was in serious need of medical attention. (*Id.*)

## Argument

I. **The Majority Overlooks a Material Point of Law Resulting in a Conflict with Another Decision of this Court So That Rehearing or Rehearing *En Banc* is Necessary to Secure Uniformity of This Court's Decisions**

As the dissent aptly pointed out, the majority's decision here ignored the recent decision from this Court in *Sandoval v. County of San Diego*, 985 F.3d 657 (9th Cir. 2021). In *Sandoval* this Court stated that the under the Fourteenth Amendment the elements of a claim against an individual defendant for denial of medical care are: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the

plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." 985 F.3d at 699. A medical need is serious "if the failure to treat the [detainee's] condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). It has long been settled that deliberate indifference is shown where an official "purposefully ignore[s] or fail[s] to respond to a prisoner's pain or *possible* medical need." *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) (reversed on other grounds) (emphasis added). Lastly, this Court has clarified that, in the context of pretrial detainees protected by the Fourteenth Amendment, deliberate indifference is interpreted solely from an objective perspective, and has no subjective component. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1069–70 (9th Cir. 2016) (en banc).

In the two-hours and twenty-two minutes (2:22) Ms. Jenkins was in Durbin's custody, from the time of the arrest through the moment she completely stopped breathing and fell into a coma, all objective facts point to one conclusion—Decedent was overdosing, a serious medical need, and Durbin exhibited a high degree of deliberate indifference toward her serious medical

needs. the FAC and the body cam footage reveal further sufficient and plausible facts that for the entirety of the over one-hour drive from the scene of the arrest to the police headquarters Ms. Jenkins pled for help, exhibited an abnormally rapid rate of breathing, including screaming very loudly and pleading, *"please help me, please help me"*, *"I'm sick"*, and *"help me...I'm telling you I can't"*. (1-ER 126:6-8; 128:8-16; video at 1:04-1:06.) (emphasis added). At one point after hearing no response from Ms. Jenkins for ten (10) minutes Durbin to pulls his car over, walks to the back and opens the back door causing Ms. Jenkins' listless body to fall half-way out of the door. (1-ER-126:18-127:14; video at 1:14:26-1:14:38.) The same holds true for the alleged facts and undisputed evidence of the body cam while at the Headquarters, which further demonstrate the plausible inference that Durbin knew that Ms. Jenkins needed immediate medical attention and failed to summon such care. After the fingerprinting is done, Durbin and another officer lift her listless body and place her in the back of the patrol car, face down, handcuffed and windows up for *eleven minutes and thirty seconds*. (1-ER-130:27-131:12; video 1:23:02-1:24:11).

As the dissent points out, Officer Durbin's actions were objectively unreasonable and thus violated the Fourteenth Amendment standard and the Fourth Amendment standard of objective unreasonable. (Dkt. 37-1, p. 39-43).

The same holds true with regards to the majority's analysis of qualified immunity. As the dissent, points out this Court has on numerous times held that an officer cannot claim qualified immunity when an unreasonable mistake of fact—such as the one in this instance occurs wherein Officer Durbin believed that Ms. Jenkins was "faking it" despite all the objective signs of a serious medical need. (Dkt. 37-1, p. 43-45, 47). An officer's mistake of fact must be reasonable under the circumstances. (Id.); *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Demuth v. County of Los Angeles*, 798 F.3D 837, 839 (9th Cir. 2015). When an officer's mistake of fact is unreasonable he is not entitled to qualified immunity. *See Jones v. Treubig*, 963 F.3d 214, 230-231 (2d. Cir. 2020); *Demuth*, 798 F.3d at 839. Instead, the majority however, found that at the time of the incident the law of providing medical care was not clearly established to put Officer Durbin on fair notice. (Dkt. 37-1, p. 23). However, this Court has stated that "persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs." *Gibson v. Cty. of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002) (reversed on other grounds). It has long been settled that deliberate indifference is shown where an official "purposefully ignore[s] or fail[s] to respond to a prisoner's pain or *possible* medical need." *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) (reversed on other grounds) (emphasis added).

Here, based on the allegations and the body cam video incorporated by reference, Officer Durbin's mistake of fact as to Ms. Jenkins' serious medical needs fails to meet the standard for qualified immunity. This Court has held that when analyzing qualified immunity an officer's subjective beliefs are "irrelevant". *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007). Here, under the totality of the circumstances present there is no other way to interpret the numerous and multiple times she pled, "I'm sick", her multiple pleas and screams of "Help me!", "please help me, please help me", "oh my god, please stop, stop, stop", and "help me…. I'm telling you I can't", but a person screaming for help and medical assistance. This coupled with Durbin and Taub's decision to cancel paramedics at the scene of the arrest, Ms. Jenkins' obvious sign of physical distress when she could stand up at the initiation of the traffic stop but could not stand or sit and lay on the ground face first in and out of consciousness when arriving at the station; her loud panting, obvious abnormal breathing rate, body twitching and shaking while she lay face down in the back seat of the patrol car and on the ground at the station; the decision to leave her handcuffed and face down in the patrol car for *eleven minutes and thirty seconds* after all the above obvious signs of a serious medical need—all demonstrate deliberate indifference toward Ms. Jenkins' serious medical needs. Moreover, this was not a mistake of law but rather an unreasonable mistake of fact on Officer Durbin's part and should not have been dismissed at the motion at the

motion to dismiss stage, but rather should have proceeded to discovery and decided ultimately by a jury.

## CONCLUSION

For all the forgoing reasons, as the dissent eloquently underscored the need to revisit the majority's holding, and Appellant respectfully requests that this Court grant his request for a rehearing or a rehearing en banc.

Dated: December 13, 2021     NAVAB LAW, APC

         By:   /s/ Kaveh Navab

            Kaveh Navab, Esq.

            *Attorney for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2021, I electronically filed the foregoing

document Petition for Rehearing and Rehearing En Banc with the Clerk of

the Court for the United States Court of Appeals for the Ninth Circuit by using the

appellate CM/ECF system.

I hereby certify that all participants in the case are registered CM/ECF users

and that service will be accomplished by the appellate CM/ECF system.

Dated: December 13, 2021          By:_____/s/ Kaveh Navab_____

                                           Kaveh Navab, Esq.